UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Robert Leavell and Joella J. Leavell,

      Plaintiffs,

v.                              Case No. 08-15278

Wells Fargo Bank, N.A., *et al.*,         Honorable Sean F. Cox

      Defendants.

_____/

## OPINION & ORDER
## DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

On or about December 4, 2008 – in the midst of state foreclosure proceedings – Plaintiffs filed suit against Defendants in state court asserting several claims relating to an underlying mortgage on their property. Defendants removed the action to this Court, based on federal question jurisdiction. The matter is currently before the Court on Plaintiffs' Motion for Preliminary Injunction, wherein Plaintiffs ask this Court to enjoin the pending state court foreclosure proceedings. The parties have briefed the issues and oral argument was heard on May 14, 2009.[1] For the reasons that follow, the Court concludes that Plaintiffs have not established that an exception to the Anti-Injunction Act's bar on enjoining state court proceedings exists in this case. In addition, assuming *arguendo* that such an exception does exist, the Court concludes that Plaintiffs have not established that they are entitled to a preliminary injunction. Accordingly, the motion shall be denied.

_____

[1]Counsel for both parties advised the Court's docket manager that they did not wish to present any witnesses at the hearing.

1

BACKGROUND

Plaintiffs Robert Leavell and Joella Leavell ("Plaintiffs") reside at 4715 Trailview in West Bloomfield, Michigan ("the Property"). On December 2, 1997, Plaintiffs entered into a mortgage with Quality Mortgage Corporation in the amount of $333,300.00. (Pls.' Hrg. Ex. 1). That mortgage was later assigned to, or otherwise acquired by, Bankers Trust Company of California / Advanta Mortgage Corp. ("the Bankers Trust Mortgage"). (*Id.*; Compl. at ¶ 13). The Bankers Trust Mortgage was recorded by the Oakland County Register of Deeds on December 16, 1997.

On that same date, December 2, 1997, Plaintiffs also entered into a second mortgage on the Property with Sterling Bank & Trust in the amount of $66,600.00 ("the Sterling Mortgage"). (Pls.' Hrg. Ex. 2). That mortgage was recorded on December 16, 1997.

Plaintiffs then made monthly payments on those two mortgages. Plaintiffs state that they paid $1,900.00 per month to Bankers Trust and $2,300.00 per month on the Sterling Mortgage. (5/14/09 Hrg. Tr.).

At some point after obtaining the Bankers Trust and Sterling Mortgages, Plaintiffs were sued by individuals or entities[2] who obtained judgments against Plaintiffs and then placed liens for $200,000.00 on the Property. (Compl. at ¶ 15).

On or about June 25, 1999, a mortgage to Norwest Mortgage, Inc. was issued on the Property ("the 1999 Mortgage") in the amount of $403,200.00. (*See* Ex. A to Defs.' Br.; Pls.' Hrg. Exhibit 3). The closing statement for that mortgage transaction reflects that the proceeds of the 1999 Mortgage were used to pay off: 1) Plaintiffs' existing Bankers Trust Mortgage of

---

[2]Plaintiffs' complaint does not identify these individuals or entities.

2

$336,002.36; and 2) Plaintiffs' existing Sterling Mortgage of $64,833.05; and 3) property taxes of $7,210.34 that Plaintiffs owed to Oakland County. (Ex. B to Defs.' Br.).

Prior to the 1999 Mortgage closing, a release of the $200,000 in liens on the Property was obtained. (Compl. at ¶ 20).

After the 1999 Mortgage closing, a discharge of the Bankers Trust Mortgage was recorded on November 24, 1999. (Pls.' Hrg. Ex. 4). It is undisputed that a discharge of the Sterling Mortgage was also recorded on or about the same date. (5/14/09 Hrg. Tr.).

Thereafter, Plaintiffs began making monthly payments on the 1999 Mortgage. (Compl. at ¶ 23). They continued making those monthly payments on the 1999 Mortgage until 2006.

Plaintiffs filed for Chapter 13 Bankruptcy on or about November 30, 2006. (Compl. at ¶ 29). During those proceedings, Wells Fargo[3] filed a proof of claim in the amount of $386,904.53, representing the amount owed by Plaintiffs on the 1999 Mortgage. (Defs.' Hrg. Exhibit O). That proof of claim attached a copy of the 1999 Mortgage. The Bankruptcy Court confirmed an Amended Chapter 13 Plan for Plaintiffs, which provided that Plaintiffs would make monthly payments of $4,545.00 on the 1999 Mortgage. (*See* Docket Entry No. 13-3).

"[D]ue to Plaintiffs' failure" to make payments under their bankruptcy plan, however, on or about July 2008, the bankruptcy court lifted the stay effective August 11, 2008. (Compl. at ¶ 31).

Following Plaintiffs' default on the 1999 Mortgage, Defendants foreclosed. A sheriff's sale of the Property took place on August 26, 2008, and Wells Fargo was the successful bidder.

---

[3]Wells Fargo Home Mortgage, Inc. ("Wells Fargo") is the successor corporation of a merger between Norwest and Wells Fargo.

(Pls.' Compl. at ¶ 39; Defs.' Resp. Br. at 7).

On or about December 4, 2008, Plaintiffs filed this action against Defendants in Oakland County Circuit Court. Plaintiff acknowledge that they filed their "Complaint in the midst of the state court foreclosure proceedings." (Pls.' Reply Br. at 2).

Plaintiffs' complaint asserts the following claims: "Slander of Title and Quiet Title Common Law Rescission" (Count I); "Fraud" (Count II); "Conspiracy" (Count III); "Michigan Consumer Protection Act MCL 445.901 *et seq*. and Unlawful Trade Practices" (Count IV); "Negligence" (Count V); "Unjust Enrichment" (Count VI); and "TILA 15 USC 1601 *et seq*." (Count VII).

All of Plaintiffs' claims relate to the 1999 Mortgage. In sum, Plaintiffs allege that, without their knowledge or cooperation, Edward Lee and others fraudulently entered into the 1999 Mortgage on their behalf. Plaintiffs claim that in doing so, Mr. Lee and/or others negotiated a settlement of the $200,000 in liens on the Property. Plaintiffs claim they were unaware that their existing Bankers Trust and Sterling Mortgages had been paid off and discharged. Plaintiffs claim that they began paying the new mortgage holder in 1999 because they thought that they were simply paying their old mortgage, which must have "adjusted." Plaintiffs do not offer any explanation as to why their monthly payments of $2,300.00 on their second mortgage to Sterling ended in 1999. Plaintiffs claim they did not discover that the allegedly fraudulent 1999 Mortgage existed until July, 2008.

Along with their complaint, Plaintiffs also filed a "Motion for Temporary Restraining Order" wherein they asked the state court to enjoin Defendants from proceeding with the foreclosure proceedings.

The parties agree that the state court heard the Motion for Temporary Restraining Order on December 10, 2008.  (5/14/09 Hrg. Tr.).  The parties further agree that the state court orally granted Plaintiffs' motion only to the extent that it ordered that the statutory redemption period would be extended for thirty days, until March 31, 2009.   Neither party, however, has submitted a copy of any written orders extending the statutory redemption period or granting any other relief.[4]

On December 26, 2008, Defendants removed the action to this Court, based on federal question jurisdiction.[5]  After the case was removed to this Court, Plaintiffs did not ask this Court to reconsider the state court's rulings.

On March 31, 2009, the statutory redemption period, which had been extended by the state court, expired.

On April 7, 2009, Wells Fargo quit-claimed the Property to JPMC Specialty Mortgage, LLC.  (Ex. M to Defs.' Br.).  JPMC Specialty is not a party to this case.

On April 29, 2009, Plaintiffs filed the instant "Motion for Ex-Parte Temporary Restraining Order, Preliminary Injunction, and Order to Show Cause."  (Docket Entry No. 8).  In that motion, Plaintiffs state that eviction proceedings are "pending in the 48th District Court in

---

[4]Although Plaintiffs' brief stated that they were "granted an Ex-Parte Temporary Restraining Order" in the state court (*see* Pls.' Br. at 10), at the May 14, 2009 hearing, Plaintiffs' counsel acknowledged that no such order was issued by the state court.  Rather, the only written order issued by the state court was the December 5, 2008 Order that set the motion for hearing on December 10, 2008.  (Pls.' Hrg. Ex. A).  The district court used the proposed order prepared by Plaintiffs to set the motion for hearing but *crossed out* all of the proposed restraining language.  Thus, the order did not grant any injunctive relief and simply set a hearing date.

[5]Plaintiffs' TILA claim is the only federal claim asserted in this action.

5

Michigan."[6]  Plaintiffs ask this Court to enjoin all foreclosure proceedings in the state courts.

After Plaintiffs filed the motion, this Court held a telephone conference with the parties on April 30, 2009.  Following that conference, the parties stipulated to an order on May 1, 2009, providing that: 1) this Court would hear the motion on May 14, 2009; 2) Defendants would adjourn a May 6, 2009 hearing that had been scheduled in state district court until May 20, 2009 at 8:30 a.m.

ANALYSIS

A.    As A Threshold Matter, The Anti-Injunction Act Appears To Bar This Court From Granting The Requested Injunctive Relief.

In responding to Plaintiffs' motion, Defendants assert that the Anti-Injunction Act bars this Court from issuing an injunction to stay state court proceedings.  (Defs.' Resp. at 15). Moreover, even if Defendants had not raised the issue, the Court may consider the issue *sua sponte*.  *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004).

The Anti-Injunction Act, 28 U.S.C. § 2283, states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

"The Supreme Court has held that 'proceedings' for the purposes of the Act include 'all steps taken or which may be taken in the state court or by its officers from the institution to the

---

[6]Plaintiffs' brief also references "summary proceedings in the 68th District Court," which may be in error.  (Pls.' Br. at 10).  Because Plaintiffs did not submit any documents relating to any state district court proceedings, however, the Court cannot determine what proceedings are pending in the state district courts, when such proceedings were initiated, or the status of such proceedings.

close of the final process." *Tropf v. Fidelity National Title Insurance Company*, 289 F.3d 929, 941-42 (6th Cir. 2002). "Such proceedings include," for example, "the foreclosure of a mortgage." 19 FED. PROC., L.Ed. § 47:103 (citing *Nixon v. Individual Head of St. Joseph Mortgage Co., Inc*., 612 F.Supp. 253 (N.D. Indiana 1985)); *see also Cragin v. Comerica Mortgage Co.*, 69 F.3d 537, 1995 WL 626292 (6th Cir. 1995) ("28 U.S.C. § 2283 generally precludes federal injunctions that would stay pending foreclosure proceedings in the state courts.").

The Supreme Court has "recognized that the Anti-Injunction Act creates 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions.'" *Martingale*, 361 F.3d at 302. "These three exceptions, embedded within the statute's text, permit injunctions against state court proceedings (1) where Congress expressly authorizes; (2) where necessary in aid of the court's jurisdiction, and (3) where necessary to protect or effectuate the court's judgments." *Id.*

"Once the Anti-Injunction defense is raised, the party pursuing the injunction bears the burden of establishing that the injunction falls within one of the exceptions." *Smith v. Encore Credit Corp*., 2008 WL 5169683 at * 7 (N.D. Ohio 2008).

Here, Plaintiffs do not assert that the injunction they seek is expressly authorized by Congress. Thus, the first exception does not apply. Because this Court has not issued any judgments in this action, the third exception does not appear to apply either, *see Smith v. ABN AMRO Mortgage Group, Inc.*, 2007 WL 2029044 at * 4 (S.D. Ohio 2007), and Plaintiffs do not assert that the third exception applies. Rather, Plaintiffs assert that the second exception applies (*i.e.*, that the requested injunction is "necessary in aid of the court's jurisdiction.").

7

"Courts have applied this second exception in only two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property *before* the state court does." *Martingale,* 361 F.3d at 302 (emphasis added).

Here, this case was removed from a state court. Assuming that this federal court acquired "in rem or quasi in rem jurisdiction" over this case, however, it is unclear whether it did so before the state district court(s) acquired such jurisdiction. Plaintiffs have not submitted any evidence to establish when Defendants initiated foreclosure proceedings in state court. Accordingly, Plaintiffs have not met their burden of establishing that the requested injunction falls within one of the exceptions.

B.      Assuming *Arguendo* That The Relief Sought Is Not Barred By The Anti-Injunction Act, Plaintiffs Have Not Established That They Are Entitled To A Preliminary Injunction.

Plaintiffs seek a preliminary injunction based on Count I ("Slander of Title and Quiet Title Common Law Rescission"), Count IV (Plaintiff's Michigan Consumer Protection Act claim), and Count VII (Plaintiffs' TILA claim) of Plaintiffs' complaint.

The parties agree that this Court should consider the following four factors when considering a motion for preliminary injunction: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury without the injunction; 3) whether issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by the issuance of the injunction. *In re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985).

"Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners*, 225 F.3d

8

620, 625 (6th Cir. 2000).

In their Response Brief, Defendants assert that Plaintiffs cannot establish a strong likelihood of success on the merits for several reasons, including that Plaintiffs' legal and equitable claims are barred under the applicable statutes of limitations, the doctrine of laches and the TILA's statutory provisions. The Court agrees.

The evidence presented establishes that Plaintiffs are precluded from obtaining relief though rescission, under their TILA claim, because such a rescission claim is time-barred. The TILA provides, in pertinent part, that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f). Here, the transaction at issue was consummated before a sale of the Property. The transaction at issue (*i.e.*, the issuance of the 1999 Mortgage) was consummated in 1999 – more than 3 years before Plaintiffs filed suit. Moreover, even if that were not the case, a foreclosure sale terminates an unexpired right to rescind. *See Marshner v. RJR Financial Services, Inc.*, 382 F.Supp.2d 918, 921 (E.D. Mich. 2005) (citing 12 C.F.R. § 226, Supp. I, Paragraph 23(a)(3)-3). Thus, the August 26, 2008 sheriff's sale would also cut-off Plaintiffs' rescission claim under the TILA. *Id.*

In addition, any claim asserted by Plaintiffs under the Michigan Consumer Protection Act ("MCPA") is also time-barred. The MCPA provides, in pertinent part, that "[a]n action under this section shall not be brought more than 6 years after the occurrence of the method, act, or practice which is the subject of the action . . . " M.C.L. § 445.9111(7). The method, act, or practice which is the subject of this action occurred in 1999 – more than 6 years before Plaintiffs

filed suit.  Thus, Plaintiffs' MCPA claim is time-barred.[7]

In response to Defendants' statute of limitations arguments, Plaintiffs assert that the doctrine of equitable tolling, or a discovery rule, should be applied here.  (Pls.' Reply Br.).  Plaintiffs contend that such equitable tolling will prevent Defendants from availing themselves of a statute of limitations and/or a laches defense.  (*Id.*).  Plaintiffs do not cite, however, any cases wherein a discovery rule or equitable tolling has been applied under facts similar to those in this case.

Under the general formulation of a "discovery rule," "a claim accrues (and the statute of limitations begins to run) when the plaintiff discovers, or in the exercise of due diligence should have discovered, the injury which forms the basis for his claim."  *Medical Mutual of Ohio v. K. Amalia Enterprises, Inc.*, 548 F.3d 383, 391 (6th Cir. 2008).  Under the discovery rule, a plaintiff has "a positive duty to use diligence in discovering the existence of a cause of action."  *Id.*  Moreover, information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence.  *Id.*

Similarly, when equitable tolling has been applied to TILA claims, the doctrine provides that the limitations period runs from the date on which the plaintiff discovers, or had reasonable opportunity to discover, the complained of TILA violation.  *See, e.g., Borg v. Chase Manhattan Bank USA, N.A.*, 247 Fed.Appx. 627, 2007 WL 2088692 (6th Cir. 2007).

Defendants contend that Plaintiffs cannot avail themselves of a discovery rule or

---

[7]In addition, "[t]ransactions involving home mortgages have consistently been held to be exempted from the MCPA by § 445.901(1)(a)."  *See, e.g., Bristow v. Ameriquest Mortgage, Co.*, 2007 WL 2461935 (W.D. Mich. 2007) (citing *Newton v. Bank W.*, 262 Mich.App. 434, 439-41 (2004)); *Evans v. JP Morgan Chase Bank*, 2007 WL 2049254 (E.D. Mich. 2007).

equitable tolling and further assert that, under the facts of this case, Plaintiffs' "slander of title/quiet title/common law rescission claim" is barred by the doctrine of latches. Defendants rely on *In re Estate of Crawford*, 115 Mich.App. 19, 26 (1982).

"Laches is an affirmative defense which depends not merely upon the lapse of time but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to the dilatory plaintiff." *Id*. "For one to successfully assert the defense of latches, it must be shown that there was a passage of time combined with some prejudice to the party asserting the defense of laches." *Id*. "Laches is concerned mainly with the question of the inequity of permitting a claim to be enforced and depends on whether the plaintiff has been wanting in due diligence." *Id*.

Defendants contend that the elements of laches are satisfied under the facts of this rather unusual case:

> Here, Plaintiffs waited over 9 years to contest the validity of the Norwest Mortgage. Besides having constructive notice of the Mortgage by virtue of its recording with the Oakland County Register of Deeds on August 2, 1999, Plaintiffs had actual notice of the Mortgage going back to the judicial foreclosure action that was filed in 2003 and reaffirmed in their bankruptcy petitions. In the interim, the Mortgage has been foreclosed, the redemption period has run and the property has been deeded to another party. Plaintiffs have, nonetheless, continued to occupy the property at the expense of Wells Fargo and/or Chase Bank. This is plainly a case where the passage of time, combined with some prejudice to Defendants resulted from Plaintiffs' want of due diligence.

(Defs.' Br. at 11).

The Court agrees that Plaintiffs cannot establish that either a discovery rule or equitable tolling save their untimely claims under the facts presented here. In addition, the Court agrees that Plaintiffs' quiet title/rescission claim is barred by the doctrine of laches.

The 1999 Mortgage – which Plaintiffs claim they were not aware of until July, 2008 -- was *recorded* with the Oakland County Register of Deeds on August 2, 1999.  (*See* Ex. A to Defs.' Br.).  Thus, Plaintiffs had constructive notice of that mortgage on that date.  *In re Estate of Crawford*, 115 Mich.App. at 26.

Plaintiffs also claim they were not aware that their original mortgages had been discharged.  However, the discharge of the original Bankers Trust Mortgage, and the discharge of the Sterling Mortgage, were both recorded soon after the execution of the 1999 Mortgage.  Thus, Plaintiffs also had constructive notice of the discharge of their original mortgages.  Knowing that *they* had not paid off either of their two mortgage themselves, a discharge of those mortgages should have caused a reasonable person to inquire as to who had paid off the mortgages and the reason for doing so.

The same is also true of the unidentified $200,000 in liens on Plaintiffs' property.  When those liens were removed, Plaintiffs had constructive notice that someone had paid off, or negotiated a discharge of, of those liens.  Knowing that *they* had not done so, this should have caused a reasonable person to inquire about the status of the liens.

After the 1999 Mortgage was executed, it is undisputed that Plaintiffs then began making monthly payments on that mortgage.  Plaintiffs do not allege that they received any notices that their Bankers Trust mortgage had been assigned to another entity, yet they nevertheless starting paying an entirely new entity a mortgage payment each month and presumably paid an entirely different mortgage amount each month.  In addition, Plaintiffs claim they did not know that the 1999 Mortgage existed, or that their Sterling mortgage had been discharged, but have no explanation as to why they ceased making their monthly payment of $2,300.00 to Sterling after

12

the 1999 Mortgage was executed.

In addition to constructive notice of the 1999 Mortgage, Plaintiffs also had actual notice of the existence of that mortgage, and the fact that their original Bankers Trust Mortgage and their second mortgage with Sterling Bank no longer existed, by virtue of the filings in their bankruptcy action. Indeed, the bankruptcy court confirmed a plan for Plaintiffs which expressly provided that Plaintiffs would make monthly payments of $4,545.00 on the 1999 Mortgage. (*See* Docket Entry No. 13-3). An actual copy of the 1999 Mortgage is part of the record in the bankruptcy action.

In addition to constructive notice of the 1999 Mortgage, Plaintiffs also had actual notice of the existence of that mortgage, and the fact that their original Bankers Trust mortgage and their second mortgage with Sterling Bank no longer existed, by virtue of the filings in a 2003 state-court judicial foreclosure action filed against Plaintiffs. (*See* Ex. D to Defs. Br.). In that action, another party sought judicial foreclosure of yet another mortgage held on the Property. In seeking to foreclose on that mortgage, the complaint in that action identified all of the other persons and entities claiming an interest to the Property and specifically identified the holder of the 1999 Mortgage (and conspicuously did *not* include either the holder of the original mortgage with Bankers Trust or the holder of the second mortgage with Sterling Bank).

In addition to constructive notice, inquiry notice and actual notice described above, Plaintiffs claim that they **actually learned of the allegedly fraudulent 1999 Mortgage in July, 2008.** (*See* Pls.' Br at 8) ("the fraud went undetected by Plaintiffs for nine (9) years until July 2008."). Notably, the sheriff's sale of the Property did not occur until August 26, 2008 – **after** that date.

13

Thus, despite being on constructive notice, inquiry notice, and actual notice of the 1999 Mortgage as early as August, 1999, Plaintiffs waited over 9 years to contest the validity of that mortgage. Worse yet, although Plaintiffs state that they learned in July 2008 that the 1999 Mortgage had been fraudulently issued, they sat back and allowed the sheriff's sale to proceed without filing suit relating to the allegedly fraudulent mortgage. Plaintiffs did not take any action until filing this suit on December 4, 2008 – shortly before the six month redemption period was set to expire.

Accordingly, for all of these reasons,[8] the Court concludes that Plaintiffs have not established a strong likelihood of success on the merits. The Court therefore concludes that Plaintiffs have not established that they are entitled to a preliminary injunction.

CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 19, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 19, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager

---

[8]In their brief, Defendants also assert other reasons why Plaintiffs cannot prevail on their claims. Given the above findings, the Court need not address those additional arguments.